1
2
3
4
5
6
7

IN THE SUPERIOR COURT OF WASHINGTON
IN AND FOR KING COUNTY

8

JUDITH CAMANN,

9                                         NO.
                    Plaintiff,

10                                        **SUMMONS**

11        vs.

12   UNITED COLLECTION BUREAU and
     VIRGINIA MASON FRANCISCAN
13   HEALTH

                    Defendants.
14

15   **TO THE DEFENDANT:** UNITED COLLECTION BUREAU:

16        A lawsuit has been started against you in the above-entitled court by the Plaintiff.  This claim

17   is stated in the written Complaint, a copy of which is served upon you with this Summons.

18        In order to defend against this lawsuit, you must respond to the Complaint by stating your

19   defense in writing, and by serving a copy upon the person signing this Summons within twenty (20)

20   days (in state) or sixty (60) days (out of state) after the service of this Summons, excluding the day of

21   service, or a default judgment may be entered against you without notice.  A default judgment is one

22   where a plaintiff is entitled to what has been asked for because you have not responded.  If you serve

23

Summons - 1

ANDERSON|SANTIAGO
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

Exhibit A
Page 1 of 39

1  a notice of appearance on the undersigned person, you are entitled to a notice before a default

2  judgment may be entered.

3       If you wish to seek the advice of an attorney on this matter, you should do so promptly so that

4  your written response, if any, may be served on time.

5       **THIS SUMMONS** is issued pursuant to Rule 4 of the Superior Court Civil Rules of the

6  State of Washington.

7

8       Respectfully submitted this 17th day of June, 2022.

9

10                              **ANDERSON SANTIAGO, PLLC**

11                              By:
                                T. Tyler Santiago, WSBA No. 46004
12                              Jason D. Anderson, WSBA No. 38014
                                Attorneys for Plaintiff
13                              787 Maynard Ave. S.
                                Seattle, WA 98104
14                              (206) 395-2665
                                (206) 395-2719 (fax)
15

16

17

18

19

20

21

22

23

Summons - 2

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665 / F (206) 395-2719

Exhibit A
Page 2 of 39

IN THE SUPERIOR COURT OF WASHINGTON
IN AND FOR KING COUNTY

JUDITH CAMANN,

Plaintiff,

vs.

UNITED COLLECTION BUREAU and
VIRGINIA MASON FRANCISCAN
HEALTH

Defendants.

NO.

**SUMMONS**

**TO THE DEFENDANT:** VIRGINIA MASON FRANCISCAN HEALTH:

A lawsuit has been started against you in the above-entitled court by the Plaintiff. This claim is stated in the written Complaint, a copy of which is served upon you with this Summons.

In order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and by serving a copy upon the person signing this Summons within twenty (20) days (in state) or sixty (60) days (out of state) after the service of this Summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where a plaintiff is entitled to what has been asked for because you have not responded. If you serve

Summons - 1

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

1   a notice of appearance on the undersigned person, you are entitled to a notice before a default

2   judgment may be entered.

3          If you wish to seek the advice of an attorney on this matter, you should do so promptly so that

4   your written response, if any, may be served on time.

5          **THIS SUMMONS** is issued pursuant to Rule 4 of the Superior Court Civil Rules of the

6   State of Washington.

7

          Respectfully submitted this 17th day of June, 2022.

8

9

10                                 **ANDERSON SANTIAGO, PLLC**

11                                 By:_____
                                   T. Tyler Santiago, WSBA No. 46004
12                                 Jason D. Anderson, WSBA No. 38014
                                   Attorneys for Plaintiff
13                                 787 Maynard Ave. S.
                                   Seattle, WA 98104
14                                 (206) 395-2665
                                   (206) 395-2719 (fax)
15

16

17

18

19

20

21

22

23

Summons - 2

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665 / F (206) 395-2719

Exhibit A
Page 4 of 39

1

2

3

4

5

6

7

8

IN THE SUPERIOR COURT OF WASHINGTON
IN AND FOR KING COUNTY

9   JUDITH CAMANN,

10                    Plaintiff,

11        vs.

12   UNITED COLLECTION BUREAU and
     VIRGINIA MASON FRANCISCAN
13   HEALTH

14                    Defendants.

15

NO.

**COMPLAINT FOR VIOLATIONS OF 15
U.S.C. § 1692 ET SEQ. AND RCW
CHAPTERS 19.16 AND 19.86 ET SEQ.**

16        COMES NOW Plaintiff, Judith Camann, by and through counsel, who alleges:

17                    I.        **PARTIES AND JURISDICTION**

18        1.        Plaintiff Judith Camann is a resident of King County Washington, from whom

19   Defendants attempted to collect a debt via letters and a lawsuit.

20        2.        Defendant UNITED COLLECTION BUREAU, INC. ("UCB"), an Ohio Profit

21   Corporation, UBI #601-935-521, is a debt collector and collection agency doing business in

22   Washington, and who repeatedly attempted to collect an alleged debt from Plaintiff.  UCB's

23   registered agent is Corporation Service Company, 300 Deschutes Way SW Ste 208 MC CSC1,

Complaint - 1

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

1    Tumwater, WA 98501.

2          3.      Defendant Virginia Mason Franciscan Health ("VMFH"), a Washington nonprofit

3    corporation, UBI #604-685-553, is a health care provider doing business in Washington, who,

4    through one of its acquisitions and/or subsidiaries, treated Plaintiff.  VMFH registered agent is

5    CT Corporation System, 711 Capitol Way S. Suite 204, Olympia, WA 98501-1267.

6          4.      Jurisdiction over Defendant is proper as Defendant is doing business in

7    Washington State and venue is appropriate in King County, Washington.

8                  **II.**     **FACTS**

9          5.      On August 21, 2021, Plaintiff Judith Camann went to St. Anne Hospital in

10    Burien, Washington for a health issue, and against on September 1, 2021.  St. Anne Hospital is a

11    part of Defendant Virginia Mason Franciscan Health.

12         6.      After the dust settled on her two visits (all insurance and discounts were applied),

13    Ms. Camann was personally responsible for $467.90 for the August 2021 visit, and $297.34 for

14    the September 2021 visit, totaling $765.24.  *See* Bill from VMFH attached as **Exhibit A**.

15         7.      After the insurance payments had been processed in mid-November 2021, on

16    December 8, 2021, Ms. Camann sent a check in the amount of $765.24 to VMFH (made payable

17    to "Virginia Mason") by way of her bank (Key Bank).  VMFH deposited the check shortly

18    thereafter and was posted to Ms. Camann's account on or about December 13, 2021.  *See* Key

19    Bank cancelled check attached as **Exhibit B**.

20         8.      Ms. Camann, having paid her medical bills, believed that her dealings with

21    VMFH were concluded, at least in relation to the aforementioned bills.

22         9.      Shortly thereafter, Ms. Camann was surprised to receive a billing statement, dated

23    December 20, 2021, from VMFH which claimed that she still owed $765.24 (which she had paid

Complaint - 2

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/ F (206) 395-2719

1    and which had cleared one week earlier).  Ms. Camann contacted VMFH by phone to inquire,

2    and believed that there must be a reasonable explanation.

3         10.    There was not.  The next few months brought increasing levels of difficulty and

4    frustration, as VMFH continued to send Ms. Camann bills claiming that she owed $765.24, and

5    Ms. Camann spent a considerable amount of time on the phone speaking with a variety of

6    VMFH representatives and billing "specialists," all to no avail.  It seemed that no one at VMFH

7    could accept the fact that they had taken Ms. Camann's money.

8         11.    Beginning in January 2022, VMFH started sending letters to Ms. Camann which,

9    insultingly, *directed her to do VMFH's job* and track down proof of the payment and transmit the

10   proof to some address in Texas.  Each letter began with the phrase: "Thank you for choosing St.

11   Anne Hospital Center as your healthcare provider.  We understand that you have a question

12   about a payment that you believe has not been applied to this account."

13        12.    Ms. Camann did not, in fact, have any questions about her payment.  Indeed, Ms.

14   Camann – a highly-experienced, nationally-board-certified special education teacher – knew

15   exactly who she had paid, how much, and when.

16        13.    Over the course of the next few months, Ms. Camann repeatedly attempted to

17   have VMFH recognize that it had already been paid through an inordinate amount of phone calls,

18   faxes, and letters.  Each time Ms. Camann was told that more information was needed, or that

19   she would need to speak to another department.

20        14.    On April 3, 2022, Ms. Camann could not believe her eyes when she received a

21   collection letter from a debt collector, Defendant UCB.  *See* April 5, 2022 collection letter

22   attached as **Exhibit C**.

23        15.    Even though she had already paid the amount in full, UCB was demanding that

Complaint - 3

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

1   she pay $467.90 for her August 2021 visit to St. Annes' Hospital.  UCB bizarrely declared that

2   Ms. Camann owed this debt with "Highline Medical Center," which was a name that St. Anne's

3   had not gone by in two years, and which made the bill even more confusing.

4       16.    Hoping to get ahead of the matter, on April 11, 2022, Ms. Camann sent certified

5   letters to both Defendants UCB and VMFH disputing that a debt was owed and asking for proof

6   that money was actually owed.  The letters were received and signed for by the Defendants.

7       17.    So that there would be no confusion of any type, on April 13, 2022, Ms. Camann

8   sent a letter to UCB explaining that she had paid in full, and *provided the check number and the*

9   *date it was processed*.  She uploaded the same explanation to UCB's website.

10       18.    By this time in April 2022, Ms. Camann, who was increasingly busy as the end of

11   the academic year approached, had been dealing with this issue for nearly a full semester.  She

12   hoped that her letters would induce UCB to have a discussion with VMFH and everyone would

13   accept the fact that she had paid.

14       19.    Undeterred by reason or facts, on April 19, 2022, UCB sent another collection

15   letter demanding the same $467.90 related to Plaintiff's August 2021 hospital visit.  This time,

16   UCB included a ledger from "Highline Medical Center," which, aside from the false name, made

17   it plain as day that this was the exact same bill that she had already paid back in December 2021.

18   *See* April 19, 2022 collection letter attached as **Exhibit D**.

19       20.    What was noteworthy about this particular letter (aside from UCB's unwillingness

20   to accept anything Ms. Camann said as being true) was that UCB had been provided with her

21   personal and private health information.  Indeed, VMFH had disseminated this information to a

22   third party (UCB) without Ms. Camann's permission without any basis (since she did not owe

23   money), which amounts to a flagrant violation of HIPAA as well as VMFH's own health

Complaint - 4

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

1 | information policies.

2 |     21.    On April 21, 2022, UCB sent yet another collection letter. This time, UCB

3 | demanded that Plaintiff pay $297.34, again including a ledger replete with improperly-supplied

4 | HIPAA-protected information.[1] This time the ledger was for Ms. Camann's September 1, 2021

5 | hospital visit, and again it was for an amount that Ms. Camann had already paid in full. *See*

6 | April 21, 2022 collection letter attached as **Exhibit E**. Again, UCB had been provided with her

7 | personal and private health information, which should not have been distributed by VMFH.

8 |     22.    UCB and VMFH's actions were particularly timely, given that just months earlier,

9 | the Consumer Financial Protection Bureau issued Bulletin 2022-01 which reminded debt

10 | collectors of their legal obligations when collecting medical debts.[2] The Bulletin was issued as a

11 | result of the "No Surprises Act," which protects patients "from surprise medical bills." Ms.

12 | Camann's bills certainly came as a surprise, given that she had already paid them.

13 |     23.    At this point, Ms. Camann was unsure of what to do, as she had paid every penny

14 | of what she owed to VMFH, had repeatedly explained to both VMFH and UCB that she had

15 | paid, including providing proof, but nobody would listen to her.

16 |     24.    As if to salt the wound, UCB sent *yet another* collection letter on June 9, 2022,

17 | again demanding that Ms. Camann pay $467.90. At no point did UCB acknowledge that Ms.

18 | Camann had provided any information of any value whatsoever, or even give lip service to

19 | investigating her payment. *See* June 9, 2022 collection letter attached as **Exhibit F**.

20 |     25.    Feeling exasperated, deflated, and without hope, Ms. Camann had no choice but

21 | to seek counsel to assist her.

22 |

23 | [1] While there are permissible purposes for disclosure of some limited information for the purpose of debt collection, a predicate to such disclosure is the *existence of an actual debt*.

[2] https://files.consumerfinance.gov/f/documents/cfpb_bulletin-2022-01_no-surprises-act_2022-01.pdf

Complaint - 5

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

26.     As a result of the Defendants' actions detailed above, Plaintiff has incurred expenses in seeking and retaining counsel in connection with ascertaining her legal rights and responsibilities, and has suffered financial uncertainty, unease, and distress caused by the false, improper, and confusing nature of the collection efforts.

## III.    CAUSES OF ACTION

### GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

27.     With respect to the alleged debt, Plaintiff is a consumer as defined by 15 U.S.C. § 1692a(3) and Defendant UCB is a debt collector as defined by 15 U.S.C. § 1692a(6).

28.     With respect to the alleged debt, Plaintiff is a "debtor" as defined by RCW 19.16.100(8) and Defendant UCB is a collection agency as defined by RCW 19.16.100(4).

29.     For claims arising under the Fair Debt Collection Practices Act, such claims are assessed using the "least sophisticated debtor" standard. *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007).

30.     Generally speaking, in Washington, principals are liable for the actions of their agents who perform the services requested, and there are numerous avenues to assess such vicarious liability. *Chicago Title Ins. Co. v. Washington State Office of Ins. Com'r*, 178 Wn.2d 120, 144 (2013) (neither "right-to-control test" nor *respondeat superior* analysis was necessary to find vicarious liability).

31.     For federal statutes, Congress is presumed to legislate against a background which includes traditional vicarious liability principles. *Meyer v. Holley*, 537 U.S. 280, 285 (2003). The Ninth Circuit has found principals liable for the actions of their debt-collector agents. *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994); *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006) ("we have recognized vicarious

Complaint - 6

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

1  liability under the FDCPA…"); *see also Huy Thanh Vo v. Nelson & Kennard*, 931 F. Supp. 2d

2  1080, 1090 (E.D. Cal. 2013).

3  **Count 1 (and all subcounts)**

4  32.    A debt collector may not use any false, deceptive, or misleading representation or

5  means in connection with the collection of any debt.  15 U.S.C. § 1692e.  This includes the false

6  representation of the character, amount, or legal status of a debt (§ 1692e(2)), the threat to take

7  any action which cannot be legally taken (§ 1692e(5)), communicating to any person credit

8  information which is false or should be known to be false (§ 1692e(8)), or the use of any false

9  representation or deceptive means to collect or attempt to collect a debt (§ 1692e(10)).

10  33.    Defendant UCB used false, deceptive, or misleading representations or means in

11  connection with the collection of an alleged debt when it:

12  34.    Attempted to collect a debt, through the mail, which Plaintiff did not owe.

13  35.    On information and belief, VMFH retains the right to control UCB's performance

14  by way of contractual agreement.

15  36.    On information and belief, VMFH attains substantial financial benefit from

16  retaining UCB.  First, this relieves VMFH of the expense and time associated with collecting

17  debts.  Second, by retaining a debt collector for this purpose, VMFH obtains an additional layer

18  of intimidation, as consumers are generally more afraid to deal with a debt collector than a health

19  care provider.  In short, by retaining UCB, VMFH is able to take advantage of the structures and

20  laws in place which govern debt collection and allow debt collectors to do business.

21  37.    As a result, VMFH is vicariously liable for UCB's violations of law.

22  38.    Therefore, Defendant violated 15 U.S.C. § 1692e, and/or its subsections, on

23  numerous occasions.

Complaint - 7

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665 / F (206) 395-2719

1

**Count 2 (and all subcounts)**

2       39.    A debt collector may not use unfair or unconscionable means to collect or attempt

3    to collect any debt.  15 U.S.C. § 1692f.

4       40.    Plaintiff realleges the paragraphs within Count 1 *supra*, as constituting unfair and

5    unconscionable means to collect a debt.

6       41.    In summary, the Defendant therefore violated 15 U.S.C. § 1692f and/or §

7    1692f(1) on numerous occasions.

8                **GENERAL ALLEGATIONS APPLICABLE TO ALL CPA CLAIMS**

9       42.    Violations of RCW 19.16.250 are per se violations of the Consumer Protection

10   Act ("CPA"), RCW chapter 19.86.[3]  *See* RCW 19.16.440.  RCW 19.86.090 provides for treble

11   damages (to a limit of $25,000) and attorney's fees.

12      43.    Because RCW Chapter 19.16 is enforced through RCW 19.86 *et seq.*, the below

13   counts alleging violations of RCW Chapter 19.16 are therefore CPA violations.

14      44.    Even minimal or nominal damages constitute "injury" under the CPA.  *Panag*,

15   166 Wn.2d at 57.  A plaintiff need not prove any monetary damages at all, as even

16   "unquantifiable damages" suffice to establish "injury" for purposes of the CPA.  *Id.* (citing

17   *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 740 (1987)).

18                              **Count 3**

19      45.    RCW 19.16.250(21) prohibits the collection, or attempted collection, of any

20   amounts in addition to the principal of a claim other than allowable interest, collection costs, or

21   handling fees expressly authorized by statute, and, in the case of suit, attorney's fees and taxable

22   _____

23   [3] *See Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 53 (2009) ("Consumer debt collection is a highly regulated field.  When a violation of debt collection regulations occurs, it constitutes a per se violation of the CPA…").

Complaint - 8

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665 / F (206) 395-2719

court costs.

46.     Here, UCB attempted to collect money that was not owed as all amounts that UCB was attempting to collect on behalf of VMFH were not owed.

47.     As stated above, VMFH is vicariously liable for the actions of UCB.

48.     Defendant therefore violated RCW 19.16.250(21) upon each debt collection attempt.

**Count 4 -Consumer Protection Act Claim**

49.     Defendants' actions described herein constitute an unfair act or practice.  These include referring the "debt" to UCB for collection purposes after she had already paid in full, and continually attempting to collect an amount not owed after being informed, repeatedly, that the amount had been paid in full.

50.     Furthermore, VMFH failed to follow its own policies regarding HIPAA disclosures, not to mention likely violating HIPAA itself, as it transmitted the personal and private health information of Ms. Camann to UCB **for absolutely no reason**. *See* VMFH's Notice of Privacy Practices attached as **Exhibit G** ("we will not use or share your health information unless we get your written permission").

51.     Ms. Camann never gave written permission to VMFH to share her information with UCB.

52.     After being informed that Ms. Camann had paid in full, VMFH and UCB repeatedly sent letters to Ms. Camann demanding money.

53.     Then, despite being having been paid and being repeatedly shown that it had been paid, VMFH allowed UCB to maintain its collection efforts.

54.     In short, Defendants disregarded the law by declaring that Ms. Camann simply

Complaint - 9

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665 / F (206) 395-2719

1    owed every penny of "bills" which she did not owe.

2    Health care, and hospitals, which are necessary institutions for the function of society at large,

3    affects trade and commerce, which is why the state legislature regulates the industry and requires

4    licenses for hospitals.  RCW 70.41 et seq.  Accordingly, hospitals and the provision of medical

5    services therein, impacts the public interest and impacts trade and commerce, and this is also true

6    when that leads to the collection of debts.  *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 53

7    (2009) ("Consumer debt collection is a highly regulated field.  When a violation of debt collection

8    regulations occurs, it constitutes a per se violation of the CPA...").

9    55.    Notably, the legislature has given debtors who are alleged to owe a medical debt

10    additional protections (and even further protections regarding hospital debts) under the WCAA as

11    enforced through the CPA.  RCW 19.16.250(28) and (29).

12    56.    Ms. Camann was injured by Defendants' actions, including incurring expenses in

13    connection with seeking counsel to ascertain her legal rights in this situation, and incurring

14    expenses in retaining counsel to address Defendants' relentless collection of amounts not owed.

15    But for Defendants' actions, Plaintiff would not have been injured in this manner.

16    57.    Therefore, Defendant Defendants violated the Washington Consumer Protection

17    Act, RCW Chapter 19.86.

18    **Count 5 – Injunctive Relief**

19    58.    A plaintiff may seek injunctive relief for violations of the Consumer Protection

20    Act. RCW 19.86.090.  Plaintiff does seek injunctive relief from this Court which would enjoin

21    Defendants from collecting debts in the manner described above from both Plaintiff and any

22    other person similarly situated.  *Scott v. Cingular Wireless*, 160 Wn. 2d 843, 853 (2007).

23    59.    Specifically, Plaintiff seeks an injunction prohibiting Defendant UCB from its

Complaint - 10

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

Exhibit A
Page 14 of 39

1    unlawful collection tactics, including but not limited to demanding money that is not owed, and

2    misinforming alleged debtors about the basis of debts.

3         60.    Plaintiff also seeks an injunction prohibiting Defendant VMFH from referring

4    accounts to debt collectors and/or collection agencies when a patient has already paid in full, and

5    from distributing personal and private health information covered by HIPAA and which is

6    supposed to be protected by VMFH's own privacy policy, without Ms. Camann's consent.

7         61.    Plaintiff has reason to believe these actions may constitute a pattern and practice

8    of behavior and have impacted other individuals similarly situated.

9         62.    Injunctive relief is necessary to prevent further injury to Plaintiff and to the

10   Washington public as a whole.

11        63.    Injunctive relief should therefore issue as described herein.

12                        IV.  **PRAYER FOR RELIEF**

13        WHEREFORE, Plaintiff prays:

14        1.     For Judgment against Defendants for actual damages.

15        2.     For statutory damages of $1,000.00, for FDCPA violations.

16        3.     For statutory damages of $2,000.00 per violation, for Washington Collection

17   Agency Act and Consumer Protection Act violations.

18        4.     For statutory damages of $2,000.00 per violation, for Consumer Protection Act

19   violations.

20        5.     For treble damages, pursuant to RCW 19.86.090, calculated from the damages

21   determined by the court.

22        6.     For costs and reasonable attorney's fees as determined by the Court pursuant to

23   15 U.S.C. 1692k(a)(3).

Complaint - 11

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665/F (206) 395-2719

7.     For injunctive relief pursuant to RCW 19.86.090 as described above.

Respectfully submitted this 17th day of June, 2021.

**ANDERSON SANTIAGO, PLLC**

By:_____
T. Tyler Santiago, WSBA No. 46004
Jason D. Anderson, WSBA No. 38014
Attorneys for Plaintiff
787 Maynard Ave. S.
Seattle, WA 98104
(206) 395-2665
(206) 395-2719 (fax)

Complaint - 12

**ANDERSON | SANTIAGO**
787 MAYNARD AVE. S
SEATTLE WA 98104
(206) 395-2665 / F (206) 395-2719

Exhibit A
Page 16 of 39

1

2

3

4

5

6

7

8

9

10

11

# EXHIBIT A

12

13

14

15

16

17

18

19

20

21

22

23

Virginia Mason
Franciscan Health

PO Box 1259
Dept # 141529
Oaks, PA 19456



JUDITH E CAMANN

0011 004085

## Account Summary

| | |
|---|---|
| Statement Date | 12/20/20? |
| Guarantor Name | JUDITH E CAMAN |
| Guarantor ID | 5146? |
| Date(s) of Service | See Bar |
| Total Charges | $14,693.5 |
| Insurance Payments | -$1,860.9 |
| Patient Payments | $0.0 |
| Total Adjustments | -$12,067.3 |
| Amount You Now Owe | $765.2 |
| Pay Monthly (See below for options) | $88.5 |

Please see reverse side for further information

# Action Required On Your Payment Plan Offer.

**Your account is past due and immediate action is required.** Go online to view options and start your payment plan today. To avoid further collection activities, you must start your payment plan or pay your account in full immediately.

## Pay Monthly

9 Payments

$88.98

**Includes $3.95 Service Fee**

## Pay In Full

OR

$765.24

## To Get Started and View More Options



For questions or support with your Activatic Code, contact MyChart Support at:
mychart.catholichealth.net or (253) 792-20?

**Activation Code: call MyChart suppor!**

You must make your first payment immediately to activate your payment plan - Please act now.

### Contact Us:

Questions About Your Bill: (888) 779-6380
You may be eligible for financial assistance. For more information please call (844) 286-5546  or go to:
www.chihealth.com/financial-assistance
Questions about your activation code? Please call (253) 792-2030

---

Please detach and return with your payment.

Virginia Mason
Franciscan Health

| Patient Name | Guarantor ID | Due Date |
|---|---|---|
| Judith Ellen Camann | | Past Due |

☐ Please check box if address above is incorrect or insurance information has changed, and indicate change(s) on reverse side.

☐ **Pay installment of $88.98**
By paying monthly, I agree to the terms located at mychart.catholichealth.net

☐ **Pay in full $765.24**

IF PAYING BY MASTERCARD, DISCOVER, VISA, OR AMERICAN EXPRESS FILL OUT BELOW

☐ ☐ VISA ☐ DISCOVER ☐        AMOUNT PAID HERE

CARD NUMBER                                    EXP. DATE(E.G. 11/1?

CARDHOLDER SIGNATURE                          SECURITY CODE

CARDHOLDER NAME(please print)                 CARDHOLDER PHONE

To Pay by Mail
- Include your account number on your check
- Make checks payable and remit to:

Franciscan Health System SBO
PO Box 31001-1975
Pasadena CA 91110-1975



› **MyChart:**
unicate with your care team
your test results

* Request prescription refills
* Manage your appointments

Login here mychart.catholichealth.net

I/5

IPORTANT: Payment is Due. Your Insurance carrier has processed your claim.

ur insurance carrier has processed your claim, the remaining balance on the account is your responsibility. Any part of a patient's account, not estimated to be covered by insurance, is due at ne of service or upon discharge. Accounts remaining unpaid may be assigned to an outside collections agency. If you have an additional insurance which has not been billed, we will file a claim · you as a courtesy. Please call (888) 779-6380 with all of your insurance Information or mail a copy of the front and back of your insurance card to the remittance address listed on the front of a payment stub. Please make your first installment payment to activate your payment plan offer, make your payment in full, or contact our office to make other arrangements.

iou are unable to pay your bill at this time, you may be eligible for financial assistance. Please contact us at (888) 779-6380 or visit www.chifranciscan.org/financialassistance for more ormation about or to determine if you qualify for financial assistance.

complaints, disputes, and checks sent as payment in full in relation to a billing dispute must be sent to:
CHI Franciscan Health
PO Box 1255,
Dept#141529
Oaks, PA 19456

Advised, however that it is not our policy to accept or honor any notation or offer of compromise, for example "Payment in Full" written on checks or accompanying materials.

## Detailed Account Summary

| | | Charge | | Outstanding Balance | Patient Balance |
|---|---|---|---|---|---|
| Previous Hospital Visits | | $14,693.57 | -$13,928.33 | $765.24 | $765.24 |
| Totals | | $14,693.57 | -$13,928.33 | $765.24 | $765.24 |

## Hospital Visits Past Due

| | Description | | | Adjam | Pmts/Adj | Patient Balance |
|---|---|---|---|---|---|---|
| Visit # | Judith Ellen Camann | St. Anne Hospital | | | | |
| 08/21/2021 | Balance Forward | | | $12,847.26 | -$12,379.36 | $467.90 |
| | Patient Balance | | | | | $467.90 |
| Visit # | Judith Ellen Camann | St. Anne Hospital | | | | |
| 09/01/2021 | Balance Forward | | | $1,846.31 | -$1,548.97 | $297.34 |
| | Patient Balance | | | | | $297.34 |
| | Previous Hospital Visits Total | | | $14,693.57 | -$13,928.33 | $765.24 |

atient Updates
'eet Address

·y                                    State    Zip

eferred Telephone #

.ail Address

irrent Address:

Insurance Updates
Insurance Name                                        Effective Date

Claim Address

City                                            State  Zip

Telephone

Subscriber Name                    Employer Name

Policy Number                      Group Number

' If you have additional changes, please contact a Customer Service Representative.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

# EXHIBIT B



**KeyBank**





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

# EXHIBIT C

United Collection Bureau, Inc.
5620 Southwyck Blvd
Toledo OH 43614
1-800-394-7542
www.payment.ucbinc.com

April 5, 2022

To.   JUDITH ELLEN CAMANN



UCB Reference Number:



United Collection Bureau, Inc. is a debt collector. We are trying to collect a debt that you owe to HIGHLINE MEDICAL CENTER. We will use any information you give us to help collect the debt.

### Our information shows:

| You have a debt with HIGHLINE MEDICAL CENTER with account number ending in ▇ | | |
|---|---|---|
| As of 08-21-21, you owed: | | $12847.26 |
| Between 08-21-21 and today: | | |
| You were charged this amount in interest: | + | $0.00 |
| You were charged this amount in fees: | + | $0.00 |
| You paid or were credited this amount toward the debt: | - | $12379.36 |
| Total amount of the debt now: | | $467.90 |

Certified mail
on
4

Notice: See reverse side for important information.

### How can you dispute the debt?

◻ Call or write to us by 05-19-22 to dispute all or part of the debt. If you do not, we will assume that our information is correct

◻ If you write to us by 05-19-22, we must stop collection on any amount you dispute until we send you information that shows you owe the debt. You may use the form below or write to us without the form. You may also include supporting documents. We accept disputes electronically at www.requests.ucbinc.com.

### What else can you do?

◻ Write to ask for the name and address of the original creditor, if different from the current creditor. If you write by 05-19-22, we must stop collection until we send you that information. You may use the form below or write to us without the form. We accept such requests electronically at www.requests.ucbinc.com.

◻ Go to www.cfpb.gov/debt-collection to learn more about your rights under federal law. For instance, you have the right to stop or limit how we contact you.

◻ Contact us about your payment options.

1

2

3

4

5

6

7

8

9

10

11 # EXHIBIT D

12

13

14

15

16

17

18

19

20

21

22

23

ISC
    5620 Southwyck Blvd
    PO Box 140190
    Toledo, OH  43614


Intelligent Solutions

04-19-22                                    1-800-394-7542

JUDITH ELLEN CAMANN

██████████████████████████

        Regarding:       See Attachments
        Creditor:        HIGHLINE MEDICAL CENTER
                         16251 SYLVESTER ROAD SW
                         BURIEN            WA 98166
    United Collection Bureau, Inc. Reference Number: ████████
    Account Balance:  $    467.90

To Whom It May Concern,

Please review the enclosed information that you requested regarding
the above mentioned account.

If you have any questions regarding this information, call our office
at the telephone number above.

Regards,

United Collection Bureau, Inc.

This is an attempt to collect a debt by United Collection Bureau, Inc., a debt collector, and any information obtained will be used for that purpose

*See Reverse Side for Important Information*

7068541C

**HIGHLINE MEDICAL CENTER**
16251 SYLVESTER ROAD SW
BURIEN, WA 98166

STATEMENT DATE  04/19/2022
PATIENT NAME  CAMANN, JUDITH ELLEN
ACCOUNT #
PHYSICIAN
DATE OF SERVICE  08/21/2021

JUDITH ELLEN CAMANN



| Transaction Post Date | Procedure Code | Description of Transaction | Charge/Debits | Payment/Credits |
|---|---|---|---|---|
| 08/21/2021 | | | | |
| 08/21/2021 | | | $333.50 | $0.00 |
| 08/21/2021 | | | $262.00 | $0.00 |
| 08/21/2021 | | | $82.76 | $0.00 |
| 08/21/2021 | | | $178.45 | $0.00 |
| 08/21/2021 | | | $3,821.10 | $0.00 |
| 08/21/2021 | | | $5,666.93 | $0.00 |
| 08/21/2021 | | | $269.36 | $0.00 |
| 08/21/2021 | | | $1,020.16 | $0.00 |
| 08/21/2021 | | | -$269.36 | $0.00 |
| 08/21/2021 | | | $269.36 | $0.00 |
| 08/21/2021 | | | $3,213.00 | $0.00 |
| 11/15/2021 | | CONTRACTUAL WRITE-OFF (INSURAN | $0.00 | -$11,107.73 |
| 11/15/2021 | | INSURANCE PAYMENT (INSURANCE) | $0.00 | -$1,271.63 |
| | | | $12,847.26 | -$12,379.36 |

**TOTAL DUE**

$467.90

THANK YOU FOR CHOOSING HIGHLINE MEDICAL CENTER TO MEET YOUR HEALTHCARE NEEDS.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

# EXHIBIT E

ISC
   5620 Southwyck Blvd
   PO Box 140190
   Toledo, OH  43614



04-21-22                      1-800-394-7542

JUDITH ELLEN CAMANN
█████████████████████████████

Regarding:     See Attachments
Creditor:      HIGHLINE MEDICAL CENTER
               16251 SYLVESTER ROAD SW
               BURIEN          WA 98166
United Collection Bureau, Inc. Reference Number: ████████
Account Balance:  $    297.34

To Whom It May Concern,

Please review the enclosed information that you requested regarding
the above mentioned account.

If you have any questions regarding this information, call our office
at the telephone number above.

Regards,

United Collection Bureau, Inc.

This is an attempt to collect a debt by United Collection Bureau, Inc., a debt collector, and any information obtained will be used for that purpos

*See Reverse Side for Important Information*

7075140ᴝ

**HIGHLINE MEDICAL CENTER**
**16251 SYLVESTER ROAD SW**
**BURIEN, WA 98166**

JUDITH ELLEN CAMANN

STATEMENT DATE   04/19/2022
PATIENT NAME     CAMANN, JUDITH ELLEN
ACCOUNT #
PHYSICIAN
DATE OF SERVICE  09/01/2021

| Transaction Post Date | Procedure Code | Description of Transaction | Charge/Debits | Payment/Credits |
|---|---|---|---|---|
| 09/01/2021 | | | $811.31 | $0.00 |
| 09/01/2021 | | | $1,035.00 | $0.00 |
| 10/18/2021 | | CONTRACTUAL WRITE-OFF (INSURAN | $0.00 | -$959.62 |
| 10/18/2021 | | INSURANCE PAYMENT (INSURANCE) | $0.00 | -$589.35 |
| | | | $1,846.31 | -$1,548.97 |

TOTAL DUE

$297.34

THANK YOU FOR CHOOSING HIGHLINE MEDICAL CENTER TO MEET YOUR HEALTHCARE NEEDS

1
2
3
4
5
6
7
8
9
10
11
# EXHIBIT F
12
13
14
15
16
17
18
19
20
21
22
23

UNITED COLLECTION BUREAU, INC.
5620 SOUTHWYCK BLVD.
TOLEDO, OH 43614

June 9, 2022

1-800-394-7542

JUDITH ELLEN CAMANN



| Creditor: | HIGHLINE MEDICAL CENTER |
|---|---|
| Account Number: | |
| Reference Number: | |
| Balance Due: | $467.90 |

Dear JUDITH ELLEN CAMANN:

We have been unsuccessful in securing a payment arrangement on the above referenced account. We request that you contact us so that we may work out a repayment plan that will satisfy our client and resolve your delinquent account.

If your account meets certain criteria specified by your medical provider, your account can be reported to the credit reporting agencies.

How to Make a Payment:

- If you would like to speak directly to a representative please call 1-800-394-7542, and please refer to reference number 70685910.
- Pay by Phone (24hours/day, 7/days a week)- please call our automated payment information system at 866-559-4319 and follow the prompts.
- Please scan the QR code below to be directed to our website to make a payment, or you can go to: www.ucbinc.com, click on make a payment and follow the prompts.



Sincerely,

United Collection Bureau, Inc.

This is an attempt to collect a debt by United Collection Bureau, Inc., a debt collector, and any information obtained will be used for that purpose.

If your account meets certain criteria specified by your medical provider, it is our intent to credit report your account if not resolved within 30 days from the date of this letter.

Please be aware that Catholic Health Initiatives offers financial assistance to patients who meet certain criteria. A summary of Catholic Health Initiatives' financial assistance policy is enclosed with this letter. If you would like more information on available programs or a copy of a financial assistance application, please call 844-286-5546 or visit Catholic Health Initiatives' financial assistance website at https://www.chifranciscan.org/financialassistance.

SEE REVERSE SIDE FOR IMPORTANT INFORMATION

159CU027080DF7GH

PLEASE RETURN THIS PORTION WITH PAYMENT, DO NOT ATTACH CHECK TO STUB

CU027000
PO Box 1280
Oaks PA 19456-1280
ADDRESS SERVICE REQUESTED

| Creditor: | HIGHLINE MEDICAL CENTER |
|---|---|
| Account Number: | |
| Reference Number | |
| Balance Due: | $467.90 |

United Collection Bureau, Inc. Reference No:
United Collection Bureau, Inc. Telephone No: 1-800-394-7542

REMIT TO:

June 9, 2022

UNITED COLLECTION BUREAU, INC.
PO BOX 140190
TOLEDO OH 43614-0190

JUDITH ELLEN CAMANN

# EXHIBIT G

 **Catholic Health Initiatives**      **CHI Franciscan**

# Notice of Privacy Practices

This notice describes how medical information about you may be used and disclosed and how you can get access to this information. Please review it carefully. **Effective date: 4.2003 Revised:** 10.2020

## INTRODUCTION

**CHI Franciscan Health** is a member of CommonSpirit Health, a large health system including Catholic Health Initiatives providers and Dignity Health providers across 21 states. All members of CommonSpirit Health participate in an Organized Health Care Arrangement (the CommonSpirit Health OHCA), so they can share health information within CommonSpirit Health for treatment, payment, and joint health care operations activities. Those joint operations activities may include quality improvement, risk management, financial and billing services, and health information exchanges. You can find a list of all the members of the OHCA here: https://home.catholichealth.net/go/OHCAlisting

Each CommonSpirit Health hospital, clinic, or health care service provider also will share health information with the doctors and many other health care providers who care for patients at the facility.

This notice uses the words "protected health information (PHI)" or "health information." Those words are defined in the HIPAA regulations. In simple terms, your "protected health information" is information about you and your healthcare that we use and disclose for your treatment and payment for your care, and for our healthcare operational purposes. It includes basic identifying information like your name, address, age, race, phone number, as well as information in your medical records and billing records. PHI can be oral, or in paper or electronic formats.

## WHO MUST FOLLOW THIS NOTICE?

We provide you, the patient, with health care by working with doctors and many other health care providers (referred to as **we, our** or **us**). This is a joint notice of our information privacy practices. The following people or groups will follow this notice:

- all CommonSpirit Health members, including hospitals, clinics, home health agencies, outpatient services, mobile units, hospice agencies, skilled nursing facilities, etc.
- any health care provider who comes to our locations to care for you. These professionals include doctors, nurses, technicians, physician assistants and others.
- all departments and units of our organization, including skilled nursing, home health, clinics, outpatient services, mobile units, hospice, rehab facilities, and emergency departments.
- our employees, students and volunteers, including those at regional support
- offices and affiliates.

## OUR PLEDGE TO YOU

We understand that your protected health information is private and personal. We are committed to protecting it. Hospitals, clinics, doctors, home health and hospice staff, and other staff members make a record each time you visit. This notice applies to all the records of your care at the facility, whether created by staff members or your doctor. Your doctor and other health care providers may have different practices or notices about their use and sharing of protected health information in their own offices or clinics that are not affiliated with CommonSpirit Health. We will gladly explain this notice to you or your family member.

We are required by law to:

- keep your protected health information private.
- give you this notice describing our legal duties and privacy practices for your protected health information.
- notify you as outlined in state and federal law if a breach of your unsecured protected health information has occurred.
- follow the terms of the notice that is currently in effect.

## HOW WE MAY USE AND SHARE YOUR PROTECTED HEALTH INFORMATION

This section of our notice tells how we may use and share your protected health information, including sharing electronically. In situations not covered by this notice or otherwise allowed by law and regulation, we will get a separate written permission from you before we use or share your protected health information. You can later cancel your permission by notifying us in writing.

We will protect your protected health information as much as we can under the law. Sometimes state law gives more protection to your information than federal law.

Sometimes federal law gives more protection than state law. In each case, we will apply the laws that protect your information the most.

**Treatment:** We will use and share your protected health information, both internally and externally, to provide you with health care treatment and to coordinate or manage your treatment with other health care providers. An example is sending medical information about you to your doctor or to a specialist as part of a referral. We may also share your information with other types of health care providers after you leave our facility, such as pharmacies, home health agencies, specialty hospitals, or long-term care facilities.

**Payment:** We will use and share your protected health information so we can be paid for treating you. An example is giving information about you to your health plan or to Medicare. We may also need to give information to your health plan to get approval for certain services or to find out if your plan will pay for certain treatment. We may also share your health information with other health care providers involved in your healthcare, such as your personal physician, anesthesiologist, ambulance services, so that they may receive payment for their services. We may also give your healthcare information to individuals who are responsible for payment for your health care, such as the named insured on your health insurance policy. For example, the person named may receive a copy of an explanation of benefits (EOB) related to your care.

**Health Care Operations:** We will use and share your medical information for our health care operations. A few examples are using information about you for:

- improving the quality of care we give you.
- disease management, wellness management, or population health programs.
- patient surveys.
- training students.
- business planning and administration.
- resolving patient complaints.
- getting or keeping our accreditation.
- compliance and legal services.

We may also share your protected health information with people or companies (called business associates) we use to help us with our operations.

**Family Members, Personal Representatives, and Others Involved in Your Care:** Unless you tell us otherwise, we may share your protected health information with your friends, family members, or others you have named who help with your care or who can make decisions on your behalf about your health care. Also, if you cannot agree due to an emergency, we may share needed protected health information about you with your family or friends who are involved in your care, based on professional judgment of what is in your best interest. In rare instances, even without your permission, we may share your information with others if the physician or health care provider feels it is in your best interest.

**Electronic Sharing and Pooling of Your Information:** We may take part in or make possible the electronic sharing or pooling of healthcare information. The most common way we do this is through local or regional health information exchanges (HIEs). Two other types of HIEs we participate in are described in the next two sections. HIEs help doctors, hospitals and other healthcare providers within a geographic area or community provide quality care to you. If you travel and need medical treatment, HIEs allow other doctors or hospitals to electronically contact us about you. All of this helps us manage your care when more than one doctor is involved. It also helps us to keep your health bills lower (avoid repeating lab tests). And finally, it helps us to improve the

overall quality of care provided to you and others. We are involved in national health reform efforts and may use and share information as permitted to achieve regional or national goals, including regional or nationally approved population health management or wellness initiatives.

**CommonSpirit Health's Health Information Exchange.** As a member of the CommonSpirit Health OHCA, this facility participates in the CommonSpirit Health - Health Information Exchange (HIE). Your health information is stored electronically, and doctors employed by, or associated with CommonSpirit Health OHCA members may use and share your health information for treatment, payment, and health care operations.

**State-Based Health Information Exchange.** This facility may participate in statewide internet-based HIE. As permitted by law, your health information will be shared through the HIE to provide faster access, better coordination of care and to assist healthcare providers, health plans, and public health officials in making more informed decisions. To opt in or out of the HIE, you must notify the HIE yourself. To obtain the HIE contact information, please visit: https://www.catholichealthinitiatives.org/content/dam/chi-national/website/corp-resp-/HIE%20Master%20list%20for%20posting.pdf or contact the facility privacy officer.

**Facility Directory:** The directory is available so your family, friends, and clergy can visit you and know how you are doing. Unless you tell us otherwise, we may list your name, location in the hospital, your general condition (good, fair, etc.) and your religion in our directory. We will give this information (except your religion) to anyone outside the organization who asks about you by name. An example is telling your hospital room number to a florist who is delivering flowers to you. Your religion will be given only to appropriate clergy members. If you do not want your name in the directory, please tell the registration personnel. If your name is not in the directory, we cannot tell members of the public or even your family or friends that you are in our facility.

**Fund-raising Activities:** We may use limited information to contact you for fundraising. We may also share such information with our fundraising foundations. You may choose to opt out of receiving fund-raising requests if you are contacted.

**Research:** We may use and share your protected health information for research projects, such as studying the effectiveness of a treatment you received. We will usually get your written permission to use or share your information for research. Under certain circumstances, we may share your protected health information without your written permission. These research projects, however, will be approved by a special committee that protects the confidentiality of your medical information.

**Organ and Tissue Donation:** We may share your protected health information with organizations that handle organ, eye or tissue donation or transplantation.

**Appointment Reminders:** We may contact you by phone, email or text messaging with appointment reminders.

**Internet Based Products and Services:** Working with third parties, we may share your health information so we can offer you internet-based products or services.
Using the products or services, you can:

- schedule appointments.
- reduce wait times in our emergency rooms.
- find a physician or get access to your medical information through a portal.

**Treatment Options and Health-Related Benefits and Services:** We may contact you about possible treatment options, health-related benefits or services that we offer.

**Health Education and Health Programs:** We may send you newsletters or brochures or contact you about health-related information, disease management programs, wellness programs, or other local programs that you might want.

**INFORMATION SHARING THAT IS REQUIRED OR PERMITTED BY LAW**
We are required or permitted by federal, state, or local law to report or share your health information for various purposes. Some of these required or permitted purposes are:

**Public Health Activities:** We may share your protected health information as required or permitted by law to public health authorities or government agencies whose official activities include preventing or controlling disease, injury, or disability. For example, we must report certain information about births, deaths, and various diseases to government agencies. We may use your health information in order to report to monitoring agencies any reactions to medications or problems with medical devices. We may also share, when requested, your protected health information with public health agencies that track opioid usage, contagious diseases or that are involved with preventing epidemics.

**Required by Law:** We are sometimes required by law to report certain information. For example, we must report child and elder abuse and neglect, and in some states, spouse abuse or neglect. We are required to report certain types of injuries, such as injuries caused by firearms. We also must give information to your employer about work-related illness, injury or workplace-related medical surveillance. Another example is that we must share information about tumors with state tumor registries.

**Public Safety:** We may, and sometimes must, share your health information in order to prevent or lessen a serious threat to you or to the health or safety of a particular person or the general public.

**Health Oversight Activities:** We may share your health information with a health oversight agency when allowed by law for health oversight activities. Health oversight agencies include the agencies that run Medicare and Medicaid, and state medical or nursing licensing boards. Health oversight activities include audits, investigations, or inspections. The activities are necessary so the government can monitor health care treatment and spending, government programs and also compliance with civil rights laws.

**Coroners, Medical Examiners and Funeral Directors:** We may share health information about deceased patients with coroners, medical examiners and funeral directors to identify a deceased person, determine the cause of death, or other duties as permitted.

**Military, Veterans, National Security and Other Government Agencies:** We may use or share your health information for national security purposes, intelligence activities or for protective services for the President or certain other persons as allowed by law. We may share your health information with the military for military command purposes when you are a member of the armed forces. We may share medical information with the Secretary of the Department of Health and Human Services for investigating or determining our compliance with HIPAA.

**Judicial or Administrative Proceedings:** We may use or share your health information in response to court orders or subpoenas only when we have followed procedures required by law.

**Law Enforcement:** We may share your health information if law enforcement officials ask us to or if we have a legal obligation to notify the appropriate law enforcement or other agencies:

- in response to a court order, subpoena, warrant, summons or similar legal process.
- regarding a victim or death of a victim of a crime in limited circumstances.
- in emergency circumstances to report a crime, the location or victims of a crime, or the identity, description or location of a person who is alleged to have committed a crime, including crimes that may occur at our facility, such as theft, drug diversion, or attempts to obtain drugs illegally.

**Disaster Relief Purposes:** We may use or share your health information with public or private disaster organizations, like the American Red Cross, so that your family can be told of your location and condition in case of disaster or emergency. We may also use it to help in coordination of disaster relief efforts.

**Workers' Compensation:** We may share your health information for workers' compensation benefits or similar programs that provide benefits for work-related injuries or illnesses if you tell us that workers' compensation is the payer for your visit(s). Your employer or workers' compensation carrier may request the entire medical record for your workers' compensation claim. This medical record may include details regarding your health history, current medications you are taking, and treatments.

**Inmates:** If you are an inmate of a correctional institution or in the custody of a law enforcement official, we may share your health information with the institution or law enforcement official. We may do this for the institution to provide you with health care, to protect your health and safety or the health and safety of others, or for the safety and security of the correctional institution.

## OTHER USES AND DISCLOSURES OF YOUR HEALTH INFORMATION

Apart from what we say in this Notice, we will not use or share your health information unless we get your written permission. Under HIPAA, this permission is called an "authorization." If you give us written permission to use or disclose your health information, you may revoke (take back) that permission in writing at any time. If you revoke your permission, we will no longer use or disclose your health information for the purpose involved. However, we cannot retrieve any disclosures that we already made based on your prior permission.

We will get your written permission to use and disclose your health information for these specific purposes when required by law:

### Marketing

Marketing means to make a communication about a product or service that you may be interested in buying. If we send a marketing communication to you about a non-CommonSpirit Health service or product, or if we receive payment from a third party in order for us to promote a product or service to you, then we are required to get your written permission before we can use or disclose your health information.

We are not required to get your written permission to talk with you in person or send you information about the following:

- health care treatment options.
- health-related products and services that are provided by CommonSpirit Health.
- case management or care coordination services.
- recommended alternative treatments, therapies, providers, or settings of care.
- samples or promotional gifts of nominal value.

You have the right to revoke (take back) your marketing permission and we will honor the revocation. To find out who to contact for opting out of these communications, please contact the Privacy Officer.

### Psychotherapy Notes

Psychotherapy notes are special notes by a mental health professional that document or analyze the contents of a conversation during a private counseling session or a group, joint, or family counseling session. Psychotherapy notes are kept separate from the rest of your health information, and they may not be used or disclosed without your written permission, except as may be required by law.

### Sensitive Medical Information

We may obtain a written permission from you, when required by state and federal laws, to use or share sensitive medical information, such as mental health, substance abuse, or genetic testing information.

### Sale of Health Information

We will obtain your authorization for any disclosure of your health information if we directly or indirectly receive remuneration (money or other valuable things) in exchange for the health information.

## THIS NOTICE DOES NOT APPLY TO THE FOLLOWING HEALTH RELATED ACTIVITIES

Some activities may not be covered by this notice and are referred to as Hybrid activities under HIPAA. If you seek services at our wellness or health fairs, for occupational health services, employee health related services, research activities conducted by academic institutions after your information has been legitimately sent to them, or direct access lab services, this notice and HIPAA do not apply.

**YOUR RIGHTS REGARDING YOUR HEALTH INFORMATION**
Your rights are listed below. Some of the rights require a written request form. You can get the appropriate written request form from the departments outlined below.

**Requesting Your Information (Access or Copy):** In most cases, when you ask in writing, you can look at or get a copy of your protected health information in your medical records or applicable parts of your billing record in paper or electronic format. You may also request that we send electronic copies directly to a person or entity chosen by you. We will give you a form to fill out to make the request. You can look at medical information about you for free. If you request paper or electronic copies of the information, we may charge a fee to cover the cost of copying, mailing, and supplies. To request a copy of your information, contact the Medical Records/ Health Information Management department or physician practice administrator for the hospital, clinic, or facility.

If we say no to your request to look at the information or get a copy of it, we will tell you why in writing. Also, you may ask us in writing to review that decision. A health care professional will review your request and the decision. The person who makes the review will not be the same person who said no to your request. We will follow the outcome of the review.

**Correcting Your Information (Amendment):** If you believe that information about you is wrong or not complete, you can ask us in writing to correct the records (make an amendment). We will give you a form to fill out to make the request. We may say no to your request to correct a record if the information was not created or kept by us or if we believe the record is complete and correct. If we say no to your request, you can ask us in writing to review that denial.

**Obtaining a List of Certain Disclosures (Accounting of Disclosures):** You can ask to receive a list of certain disclosures we have made of your protected health information during the last six years. To get the list, ask for the Accounting of Disclosures Form from the Medical Records/Health Information Management department or the Privacy Officer. Your request must be in writing and state the time period (up to six years) for the listing. The first request in a 12-month period is free. We will charge you for any additional requests for our cost of producing the list. We will give you an estimate of the cost when you request the additional list.

**Right to Ask for Confidential Communications:** You have the right to ask us to communicate with you about health care matters in a certain way or at a certain address. For example, you can ask that we only contact you at a different location from your home address, such as work, or only contact you by mail instead of by phone. Your request must tell how or where you want to be contacted. We do not require a reason. We will agree to all reasonable requests.

**Right to Ask for a Restriction:** You can ask in writing that we limit our use or sharing of your protected health information for treatment, payment and operational purposes. We are not required to agree to most requests. Any time you make a written request, we will consider the request and tell you in writing of our decision to accept or deny your request. We are legally required to agree to only one type of restriction request: if you have paid us in full for a health procedure or item for which we would normally bill your health plan, we must agree to your request not to share information about that procedure or item with your health plan. For example, if you saw a counselor and paid in full for the services rather than submitting the expenses to your health plan, you may ask that your health information related to the counseling not be shared with your health plan.

**Right to Receive Notice of a Privacy Breach:** We will tell you if we discover a breach of your health information. Breach means that your health information was disclosed or shared in an unintended way and there is more than a low probability that it has been compromised. The notice will tell you about the breach, about steps we have taken to lessen any possible harm from the breach, and actions that you may need to take in response to the breach.

**Right to a Paper Copy of This Notice:** You have the right to a paper copy of this notice. If you have received this notice electronically, you still can have a paper copy of this notice. You may ask us to give you a copy of this notice at any time.

**To ask questions about any of these rights, or to obtain a paper copy of this notice, contact the Privacy Officer. You may also obtain a copy of this notice at our website.**

**CHANGES TO THIS NOTICE**

We may change our privacy practices from time to time. Changes will apply to current medical information, as well as new information after the change occurs. If we make an important change, we will change this notice. We will also post the new notice in our facilities and on our website. You can ask in writing for a copy of this notice at any time by contacting the facility's Privacy Officer. If our notice has materially changed, we will give you a copy of the notice the next time you register for treatment.

**DO YOU HAVE CONCERNS OR COMPLAINTS?**

If you think your privacy rights may have been violated, you may contact us at PrivacyOffice@CommonSpirit.org, or call 1-800-845-4310, or contact the facility's Privacy Officer. You may also send a written complaint to the U.S. Department of Health and Human Services, Office of Civil Rights at OCRComplaint@hhs.gov or Centralized Case Management Operations, U.S. Department of Health and Human Services, 200 Independence Avenue, S.W., Room 509F HHH Bldg., Washington, D.C. 20201. We will not take any action against you or change our treatment of you for filing a complaint.

**CONTACT INFORMATION**

CommonSpirit Health Division Privacy Officer, NW
Phone: 1-833-775-1256
Email: PrivacyOffice@CommonSpirit.org